IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TIZAZU F. AREGA,**

   **Petitioner,**

  v.

**CHILLICOTHE CORRECTIONAL INSTITUTION,**

   **Respondent.**

**CASE NO. 2:16-CV-00618**
**JUDGE MICHAEL H. WATSON**
**Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1-2), as well as a Motion for Leave to Proceed *In Forma Pauperis* (Doc. 1). This matter is before the Court pursuant to its own motion to consider the sufficiency of the Petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. The Motion for Leave to Proceed *In Forma Pauperis* (Doc. 1) is **GRANTED**. However, for the reasons that follow, the undersigned Magistrate Judge **RECOMMENDS** that the Petition be **DISMISSED** as barred by 28 U.S.C. § 2244(d)'s one-year statute of limitations.

**I. FACTS AND PROCEDURAL HISTORY**

The Ohio Tenth District Court of Appeals summarized the facts of this case as follows:

> On March 1, 2011, appellant was indicted on one count of rape by vaginal penetration and one count of rape by anal penetration, both in violation of R.C. 2907.02, and one count of sexual battery in violation of R.C. 2907.03. The facts underlying the indicted charges were adduced at trial as follows. The victim, N.B., testified that on July 9, 2010, a car struck her as she was crossing the street to reach a city bus. As a result of the accident, N.B. suffered a broken leg that required surgery including the placement of a rod and screws. Because she was prohibited from putting any weight on her leg for eight weeks, N.B. went to Heartland Victorian Village ("Heartland"), a skilled nursing facility, for rehabilitation.

N.B.'s ability to move around began to improve "about the second week in August" when at this time, though wearing a fracture boot and still prohibited from putting weight on the injured leg, she was able to get from her bed to her wheelchair and was able to move by herself "a little bit more." (Tr. 23–24.) Appellant was employed at Heartland as a state tested nursing assistant ("STNA's" or "nursing assistant"). From her stay at Heartland, N.B. knew appellant as "Mr. T.," the name he was commonly referred to by those at Heartland.

Regarding these charges, N.B. described that on September 1, 2010, appellant entered her room and asked her how she was doing. Appellant then shut the door, put the wheelchair against the door, and began kissing the back of her neck, cheeks, and eventually her lips. N.B. testified she was sitting in the middle of her bed when appellant starting kissing her and then he pushed her over so that she was "bent over in bed." (Tr. 26.) Appellant pulled her pajama bottoms down and inserted his penis into her vagina and anus. N.B. testified appellant was hurting her and she tried to say stop, but appellant told her to be quiet "because he acted like he didn't want to be caught." (Tr. 27.) According to N.B., the incident lasted "two to five minutes." (Tr. 28.) After it was over, appellant pulled N.B.'s pajama bottoms back up and said he would change the sheets. N.B. moved to the chair next to the bed and sat there while appellant changed the sheets. After he was finished, appellant put the sheets in a bag and left.

Not knowing what else to do, N.B. called her gynecologist who in turn called Heartland. After receiving the call, a nurse from Heartland asked N.B. about what happened and N.B. told her. N.B. also told one of the other STNA's that came into her room. N.B. was then transported to the emergency room for treatment and examination. While at the emergency room, N.B. talked with a detective from the Columbus Police Department. At trial, N.B. denied ever having a romantic relationship with appellant, and further denied having any other interactions with him that were personal in nature.

After N.B.'s gynecologist notified the staff at Heartland about the situation, Terrika Roy, a licensed practical nurse at Heartland, talked with appellant. While initially denying that he had been in N.B.'s room, appellant then admitted that he had been there to wash N.B. and change her sheets. When Roy told appellant what N.B. had reported, appellant responded, "[T]his is bullshit. I don't have to take this," and he left the facility. (Tr. 56.) Christa King, former administrator of Heartland, testified she conducted a phone

> interview with appellant the day following the incident. Appellant told King he went into N.B.'s room to change her sheets because they were wet. Appellant denied the allegations and he was informed that he was suspended pending the investigation. Appellant's DNA matched semen found on N.B.'s shorts and in her vagina.
>
> Appellant testified on his own behalf. At trial, appellant admitted to engaging in sexual intercourse with N.B. on September 1, but testified it was consensual. According to appellant, since N.B.'s arrival at Heartland, the two often "flirted" with each other and had discussed how their relationship would proceed after she left Heartland.
>
> After deliberations, the[] jury returned verdicts finding appellant guilty of rape by vaginal intercourse, guilty of sexual battery, and not guilty of rape by anal intercourse. The trial court merged the convictions for purposes of sentencing, and appellant was sentenced to nine years incarceration. Additionally, appellant was awarded 34 days of jail-time credit.

*State v. Arega*, 983 N.E.2d 863, 863–65 (Ohio Ct. App. 2012). Petitioner challenged his convictions in the appellate court, alleging due process violations. *Id.* at 865. On December 6, 2012, the appellate court sustained Petitioner's claim with respect to his conviction for sexual battery but overruled with respect to his conviction for rape, thus affirming in part and reversing in part. *Id*. at 871. Because the sexual battery and rape offenses merged, resentencing was not necessary. *Id.* Petitioner did not file a timely appeal.

Instead, on May 2, 2014, he filed a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 1-4 at ¶ 1). The next month, on June 10, 2014, the appellate court denied the motion for failing to establish good cause for not filing timely. (*Id.* at ¶ 3 ("[Petitioner] fails to establish good cause for the untimely filing as it offers not explanation for why he could not raise these asserted assignments of error in a timely manner."). Petitioner then filed a petition for post-conviction relief in the state trial court on January 2, 2015, which was dismissed on April 30, 2015. (Doc. 1-5 at 3, 5). Petitioner did not file a timely appeal and

3

instead filed another motion for a delayed appeal, pursuant to Ohio Appellate Rule 5(A), which the appellate court denied on June 22, 2015. (Doc. 1-6 at 1). On May 18, 2016, the Supreme Court of Ohio likewise denied Petitioner's motion for a delayed appeal. (Doc. 1-7) .

On June 24, 2016, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1-2 at 15); *see Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a pro se prisoner "files" a petition at the time when he delivers it to the prison for forwarding to the clerk of courts). Petitioner asserts that he was denied effective assistance of trial counsel (claim one); denied a fair trial due to prosecutorial misconduct (claim two); denied effective assistance of appellate counsel (claim three); and that he is actually innocent of the charges against him (claim four). (Doc. 1-2 at 5–10).

## II.　DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on the filing of habeas corpus petitions. In relevant part, the statute provides:

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4

>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Here, Petitioner had 45 days from the date of the appellate decision, December 6, 2012, in which to file a timely appeal to the Supreme Court of Ohio. *See* Rule 7.01(A)(1)(a)(i), Rules of Practice of the Supreme Court of Ohio. Petitioner did not appeal, and his judgment of conviction became final in January 2013, when his 45-day clock expired. *See Board v. Bradshaw*, 805 F.3d 769, 771–72 (6th Cir. 2015) ("[Petitioner's] sentence became final . . . when the period for seeking direct review of his sentence expired."). Pursuant to 28 U.S.C. § 2244(d)(1)(A), AEDPA's statute of limitations expired one year later, in January 2014. More than two years later, on June 24, 2016, Petitioner filed the instant habeas corpus petition. (Doc. 1-2 at 15). Accordingly, the Petition is time barred.

In addition, there is no basis to toll the statute of limitations in this case. As an initial matter, state collateral actions filed after AEDPA's limitations period has expired do not toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2). *See Ross v. Freeman,* No. 4:14-cv-22-HSM-SKL, 2015 WL 1285366, at *2 (E.D. Tenn. March 20, 2015) (citing *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not . . . 'revive' the limitations period *(i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.")). Petitioner's 26(B) application (dated May 2, 2014), state post-

5

conviction petition (dated January 2, 2015), 5(A) application (dated June 17, 2015), and motion for delayed appeal to the Supreme Court of Ohio (dated May 23, 2016) all were filed well after AEDPA's clock had expired in January 2014. Accordingly, these filings could not—and did not—toll the limitations period or otherwise restart the AEDPA clock.

Finally, the record in this case does not provide a basis for equitable tolling—which federal courts should invoke only "sparingly." *Rainey v. Brunsman*, No. 12-cv-292, 2013 U.S. Dist. LEXIS 22179, at *7 (S.D. Ohio Feb. 14, 2013) (internal quotation marks omitted). "A 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Petitioner has not made such a showing here. Moreover, while Petitioner alleges actual innocence (Doc. 1-2 at 10), he has offered no support for this claim. Without "new evidence" that makes it "more likely than not that no reasonable juror would have convicted him," a petitioner may not make use of the actual-innocence gateway and escape AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) (internal quotation marks omitted). Accordingly, Petitioner has not met the "demanding" actual-innocence standard, *see Perkins*, 133 S. Ct. at 1935, and his claims are time barred.

### III. RECOMMENDED DISPOSITION

Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that this action be dismissed as barred by the one-year statute of limitations under 28 U.S.C. § 2244(d).

## **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A district judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a district judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: August 1, 2016                                    /s/ Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE